UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA MOUSER,

    Plaintiff,

    v.                            Case No. 3:20-CV-494 JD

KEYSTONE RV COMPANY,

    Defendant.

## OPINION AND ORDER

Joshua Mouser purchased a recreational vehicle ("RV") manufactured by Keystone RV Company ("Keystone") in 2018 and thereafter incurred considerable headaches caused by the RV's numerous defects and Keystone's customer service. Mr. Mouser's RV suffered from at least eight defects, and Mr. Mouser attempted to have these defects repaired pursuant to the one-year limited warranty issued by Keystone by contacting Keystone's authorized selling dealer, Camping World in Tulsa, Oklahoma ("Camping World"). Unfortunately, Mr. Mouser experienced a cyclical customer service run-around where both Camping World and Keystone insisted only the other entity could assist him. After three repair attempts, several months, and numerous communications with both Camping World and Keystone, the defects persisted, and Mr. Mouser filed this suit for breach of warranty and unfair and deceptive practices.

Keystone filed the instant motion for summary judgment (DE 21), advancing several arguments requiring the Court's application of Indiana law. Alas, the applicable choice of law rules dictate that Oklahoma law must apply, and therefore none of Keystone's arguments are sufficient to defeat Mr. Mouser's breach of warranty claims. As such, the Court denies Keystone's motion for summary judgment with respect to those claims. However, Mr. Mouser has failed to point to a qualifying misrepresentation to support his unfair and deceptive practices

claim brought under the Oklahoma Consumer Protection Act ("UDAP/OCPA claim"), so the Court grants Keystone's motion for summary judgment as to that claim.

### A. Facts

On March 30, 2018, Mr. Mouser purchased an RV from Camping World for $66,951. That RV was covered by a one-year limited warranty, issued by the manufacturer, Keystone. Under the terms of that warranty, the buyer was instructed to contact the local authorized selling dealer concerning repairs or issues covered under the warranty. Camping World was one such authorized dealer. The warranty also specifies that if the buyer encountered difficulty obtaining warranty service, he may contact Keystone directly at the customer service number provided. The warranty does not require the buyer to allow Keystone to inspect the RV prior to obtaining any remedy.

Mr. Mouser enjoyed taking the RV around Oklahoma, but from the beginning, the RV suffered numerous defects. On May 12, 2018, Mr. Mouser took the RV on a camping trip to the sand dunes. During that trip, he discovered that running the bedroom A/C unit tripped the RV's breaker, causing the A/C system to shut down entirely. At this time, it appeared this defect occurred only when the RV was plugged into shore power. He also discovered a water leak under the kitchen sink and some faulty wiring. The next week, Mr. Mouser called Camping World about the issues, and Camping World recommended some DIY fixes, which Mr. Mouser implemented.

On or about May 26, 2018, Mr. Mouser took the RV to Weatherford, Oklahoma, where he discovered the A/C breaker and water leak issues persisted. He again called Camping World and additionally called Keystone directly. Neither company had any advice for Mr. Mouser, nor

2

did either instruct him to bring the RV in for repair. Immediately upon returning from that trip, Mr. Mouser again called Camping World about the RV's issues. Camping World recommended a DIY fix for the leaking, which Mr. Mouser implemented, and suggested he call Keystone directly for assistance with the A/C breaker issue. He did so, and Keystone suggested he take the RV to the dealership when he had time.

Wanting to enjoy his first summer with his newly-purchased RV and believing he could work around the issues, Mr. Mouser determined he would take the RV in for service at Camping World over the winter. He proceeded to take the RV to an Oklahoma lake for Father's Day. On this trip, he discovered that the A/C breaker persisted whether the RV was plugged into shore power or running on the generator. He called Camping World to document this, but no documentation was made. In August and September, he took a couple more trips in the RV. He noticed more issues arise during that time and decided to keep the RV through the winter to make sure everything worked in the winter months. Mr. Mouser was focused on having all the issues repaired in one go.

On February 3, 2019, Mr. Mouser took the RV to Woodward, Oklahoma. During that trip, he discovered that the bedroom furnace would not shut off and that the fireplace breaker would trip when the television was on. On February 16, he took the RV to Camping World to have all the defects repaired under the warranty. Camping World and Mr. Mouser agreed that the repairs would be completed within 45 days. After a couple weeks, Mr. Mouser began periodic check ins with Camping World via call and email. He was not impressed with the progress being made to repair the defects. Concerned, Mr. Mouser called Keystone directly to discuss the issue. Keystone began directing Camping World on the completion of the repairs, but did not instruct Mr. Mouser to take any other action. On June 14, 2019, over four months after the RV was

3

presented for repair and well into traditional RV season, Camping World informed Mr. Mouser that his RV was repaired and ready for pickup.

That same day, Mr. Mouser went to Camping World to pick up the RV. He inspected the repairs and found that the A/C was still tripping the breaker. He informed Camping World of this issue, and they promised to repair the RV. Believing Camping World, Mr. Mouser left the RV at the dealer. This constituted the second repair attempt of the A/C breaker issue. On July 15, 2019, one month later, Camping World delivered the RV to Mr. Mouser, representing that the A/C breaker defect had been repaired. Shortly thereafter, Mr. Mouser tested the A/C and found that turning it on caused the RV's generator to shut off. Mr. Mouser contacted Camping World, and they picked up the RV the next day for a third repair attempt. On August 21, 2019, five weeks later, Camping World delivered the RV to Mr. Mouser, and again, Mr. Mouser discovered that the A/C breaker issue as well as several other issues persisted. He reached out to Keystone about the continued failure, and Keystone responded that nothing could be done, and he would have to take the RV to Camping World.

On December 27, 2019, Mr. Mouser sent a letter to Keystone via certified mail detailing the RV's defects and the multiple failed repair attempts. In response, Keystone began communicating via email with Mr. Mouser's attorney, though Keystone never offered to pay any damages and delayed providing a formal written position on the claims. Instead, Keystone repeatedly asked to examine the RV at its headquarters or at another agreed upon location. Communications regarding this extra inspection eventually broke down, due in part to scheduling difficulties acerbated by the Covid-19 pandemic in spring 2020. On June 16, 2020, Mr. Mouser filed this suit, challenging eight defects including the A/C breaker defect. Of these defects, four were repaired after the first repair attempt; three remain unrepaired but were only

4

subject to the initial repair attempt, and one—the A/C breaker defect—remains unrepaired despite three repair attempts totaling 180 days.

### B.  Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id*. at 255.  Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). On summary judgment, the Court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that we leave those tasks to factfinders. *Berry v. Chicago Transit Auth*., 618 F.3d 688, 691 (7th Cir. 2010). Even if the facts are undisputed, summary judgment will not be entered unless the facts show the movant is entitled to judgment as a matter of law. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 602 (7th Cir. 2015); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 398 (7th Cir. 1995).

### C.  Discussion

The record does not show Keystone is entitled judgment as a matter of law on Mr. Mouser's breach of express or implied warranty claims when properly analyzed under Oklahoma law. Oklahoma law reserves questions of reasonableness for the jury, and this case is replete with such questions. However, the Court finds summary judgment on Mr. Mouser's OCPA claim appropriate because he has not stated a non-duplicative qualifying unfair practice under the Act. Accordingly, the Court denies Keystone's motion for summary judgment on Mr. Mouser's breach of express warranty, implied warranty, and Magnuson-Moss claims, and grants summary judgment on his UDAP/OCPA claim.

### *(1) Choice of Law*

The Court must begin by determining which state's law controls. Mr. Mouser argues Oklahoma law controls all claims, while Keystone argues Indiana law controls the contract claims and Oklahoma law controls the UDAP claim. "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Indiana law does not require an entire action to take the law of the same state; that is, a Court might apply one state's law to a plaintiff's contract claims while applying another state's law to plaintiff's tort claims in the same action. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815 (Ind. 2010). In this case, Oklahoma law is the correct choice of law for Mr. Mouser's contract as well as UDAP claims.

### *(a) Oklahoma law controls the contract claims.*

Indiana's choice of law rules in contract cases apply the law of the state with the most intimate contacts. *Nat'l Union Fire*, 940 N.E. 2d at 815. To determine the state with the most significant relationship to the transaction and the parties, and therefore the most intimate contacts, the Court considers five factors: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 7 (Ind. Ct. App. 2009). Considering the above, the facts of this case overwhelmingly favor the application of Oklahoma law. The RV in question was purchased in Oklahoma, the warranty was offered and signed in Oklahoma, the RV appears to have been operated entirely in Oklahoma, the issues were discovered in Oklahoma, the repair attempts occurred in Oklahoma, and Mr. Mouser is a resident of Oklahoma. Disputes about contractual choice of law often concern messier facts, such as an RV that incurs repairs across multiple states. *See, e.g. Pecan Tr. v. Nexus RVs, LLC*, No. 3:22-CV-531 DRL-MGG, 2023 WL 346218, at *2 (N.D. Ind. Jan. 20, 2023) (applying Arizona law where repairs occurred in Texas, Arizona, and Indiana). But here, the entire transaction from purchase to suit occurred in Oklahoma; that state's intimate contacts are inarguable. The only connections this suit has with Indiana are the location of this Court, which is not a relevant factor, and the corporate citizenship of Keystone, which the Court does not find dispositive considering the overwhelming connection of this suit to Oklahoma and Keystone's choice to do business in Oklahoma. *Cf. NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580–81 (7th Cir. 1994) (finding personal jurisdiction in Indiana over out of state corporate defendant because it availed itself of the forum and applying Indiana choice of law rules to select Indiana law). Given the undeniable connections between this suit and Oklahoma,

7

the Court would err to proceed under any other state's law and so will not. *See Shearer v. Thor Motor Coach, Inc*., 470 F. Supp. 3d 874, 884 (N.D. Ind. 2020) (applying Florida law on similar facts). Oklahoma law controls all claims sounding in contract, including breach of express warranty, breach of implied warranty, and Magnuson-Moss. *See Boehmke v. Stuart Pontiac-Cadillac, Inc*., No. CIV-21-537-D, 2022 WL 1321553, *4 (W.D. Okla. May 3, 2022) (discussing Magnuson-Moss choice of law).

Keystone argues that Indiana law may be applied regardless of the most intimate contacts because there is not a true conflict of laws, and the choice of law analysis only occurs if there is such a conflict. *See Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co*., 919 N.E.2d 565, 575 (Ind. Ct. App. 2010). A true conflict exists if there is a difference between the relevant laws that is important enough that it may affect the outcome of the litigation in this case. *Id*. at 576. Here, the conflict is straightforward. Indiana law has defined "reasonable opportunity to cure" as meaning more than two attempts. *Zylstra v. DRV, LLC*, 8 F.4th 597, 602 (7th Cir.), cert. denied, 211 L. Ed. 2d 403, 142 S. Ct. 716 (2021) (applying Indiana law). Under this standard, the Court would grant summary judgment on seven out of eight of Mr. Mouser's claims, as they were only presented for repair once. But Oklahoma law holds that the reasonableness of an opportunity to cure is a fact question for the jury; if the Court adopted Oklahoma's law, all eight of Mr. Mouser's claims could survive. *See Cline v. DaimlerChrysler Co., Corp*., 114 P.3d 468, 476 (Okla. Civ. App. 2005). Further, the Seventh Circuit held that time out of service of 102 days could not support a breach of warranty case as a matter of law in *Zylstra*. 8 F.4th at 609. Given that this suit concerns delays of 119 days and Mr. Mouser has not stated a reason why the extra 17 days would be dispositive, if applying Indiana law, the Court would again grant summary judgment on at least seven of Mr. Mouser's claims. Oklahoma has no such bright line rule, and

the delay is again reserved as a jury question. *Cline,* 114 P.3d at 476. The difference between

winning and losing nearly 90% of one's claims cannot be written off as immaterial. Accordingly,

the Court finds a true conflict of laws exists, and Oklahoma law must be applied.

> (b) *The UDAP claim is brought under Oklahoma law, and Oklahoma law*
>
> *controls.*

A statutory or tort claim is not necessarily controlled by the contractual choice of law

analysis; a single action could contain multiple claims and apply different states' law. *Simon v.*

*United States*, 805 N.E.2d 798, 801 (Ind. 2004). However, in this case, the parties have

consented on summary judgment that Mr. Mouser brings a claim under the Oklahoma Consumer

Protection Act ("OCPA"), which will be governed by Oklahoma law. *See Allen v. Great Am.*

*Rsrv. Ins. Co*., 766 N.E.2d 1157, 1167 (Ind. 2002) (applying Indiana law to breach of contract

and common law fraud claims but North and South Carolina law to claims brought under each

state's respective unfair trade practices statute). Although it was initially unclear which state's

unfair, deceptive, and abusive practices statute Mr. Mouser intended to proceed under,[1] on

summary judgment, he has clearly chosen OCPA. (DE 28 at 24–25.) Therefore, to the extent a

claim ever existed under the Indiana Deceptive Consumer Sales Act, the Court finds it

abandoned by Mr. Mouser's failure to defend it on summary judgment. *See Maclin v. SBC*

*Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). As such, the Court will proceed under the OCPA

alone for the UDAP claim, and Oklahoma law will apply.

---

[1] The complaint stated: "Third Claim: UDAP Law(s): This claim is for violation of applicable state UDAP laws, being the Indiana Deceptive Consumer Sales Act, I.C. 24-5 et. seq. and/or the Oklahoma Consumer Protection Act, 15 Okl. St. 7611 et seq., by Defendant." (DE 1 at 10–11.)

9

### (2) Breach of Express Warranty

Keystone presents two primary arguments for summary judgment on Mr. Mouser's breach of express warranty claims: that Mr. Mouser did not offer Keystone reasonable opportunity to cure as a matter of law, and that Mr. Mouser's suit is inappropriate because he did not first avail himself of the limited backup remedy. Under Oklahoma law, a breach of warranty claim exists where (1) a warranty exists, (2) the warranty was breached, and (3) the breach of the warranty was the proximate cause of the loss sustained. *Am. Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 595 (Okla. 1981). Keystone's arguments concern the second prong, whether a breach occurred. Applying Oklahoma law, the reasonableness of the opportunity to cure is a jury question, and Mr. Mouser met his burden to avail himself of the limited backup remedy. Therefore, the Court denies summary judgment, finding factual questions remain that cannot be resolved at this juncture.

### (a) Whether Keystone was afforded a reasonable opportunity to cure is a jury question.

The Court begins with the question of whether Keystone was afforded "reasonable opportunity to cure" as required under Magnuson-Moss and the express terms of the warranty. Troublingly, the Court must begin by clarifying basic principles of contract law. An express warranty is a contract, and a court looks to the terms of a contract when interpreting and enforcing it. *Hampton v. Gen. Motors, LLC*, --- F.Supp.3d ---, 2022 WL 4538440, at *3 (E.D. Okla. Sept. 28, 2022) (noting the first step in analyzing a breach of express warranty claim is "examining the plain language of the warranty."). The limited warranty in question, though

awkwardly drafted, unquestionably requires the buyer afford Keystone a reasonable opportunity to repair. (DE 23-3 at 1.) Mr. Mouser argues that the U.C.C. as adopted by Oklahoma does not require reasonable opportunity to cure and requires only that the buyer timely notify the seller of the default, so it is not dispositive whether Keystone was afforded a reasonable opportunity to cure. That argument misses the mark. The U.C.C. represents a default rule; parties are free to contract around or outside of it. *See* U.C.C. Art. § 1-302(a). ("Except as otherwise provided… the effect of provisions of the Uniform Commercial Code may be varied by agreement.") Because the express terms of the limited warranty require a reasonable opportunity to cure—thus opting out of the U.C.C.'s rule—a reasonable opportunity to repair must be had, regardless of the U.C.C.'s thoughts on the matter.

So, a reasonable opportunity to repair must have been afforded to Keystone before a breach could occur. With that established, the Court can consider whether Keystone was afforded a reasonable opportunity to repair under Oklahoma law. A reasonable opportunity to repair implies notice plus time. *See Osburn v. Bendix Home Sys., Inc*., 613 P.2d 445, 449 (Okla. 1980) (the limited repair remedy implies repair will be timely); *Cline*, 114 P.3d at 469 (Magnuson-Moss requires reasonable notice). While Indiana law has defined "reasonable opportunity to cure" to mean at least three attempts to cure, Oklahoma law is not so militant. Under Oklahoma law, whether the opportunity to repair was reasonable is a fact question for the jury; *Cline* explicitly holds as such. 114 P.3d at 469; *see also Precision Aggregate Prod., L.L.C. v. CMI Terex Corp*., No. CIV-06-1146-L, 2007 WL 9711241, at *6 (W.D. Okla. Nov. 7, 2007) (cannot say as a matter of law whether a reasonable opportunity to repair was given). But *Cline* is but one thread in the voluminous tapestry of Oklahoma case law reserving similar questions of notice and timeliness for the jury in contracts cases. *See Am. Fertilizer Specialists,* 635 P.2d at

11

596 (sufficiency of notice and reasonable time for notice goes to the jury under most circumstances); *I.C. Gas Amcana, Inc. v. J.R. Hood*, 855 P.2d 597, 600 on reh'g in part (July 6, 1993) (reasonable time in contract is generally a fact issue for the jury); *Oberg v. Phillips*, 615 P.2d 1022, 1025 (Okla. Civ. App. 1980) (what constitutes a reasonable time to remedy defect is a question of fact for the jury); *Telco Supply Co. v. Remee Prod. Corp.*, No. CIV-13-207-RAW, 2014 WL 4826648, *3 (E.D. Okla. Sept. 29, 2014) (reasonable notice of breach goes to jury). The Court has no question an Oklahoma court applying Oklahoma law would decline to decide whether the opportunity to repair was reasonable as a matter of law and would instead send the question to the jury. Under this extremely clear precedent, the Court declines to grant summary judgment and reserves the question of whether Keystone had a reasonable opportunity to cure the defects for the factfinder at trial.

Keystone argues in its reply brief that it did not have a reasonable opportunity to cure because it was not afforded notice, as Mr. Mouser frequently communicated his concerns to Camping World. Keystone points to decisions by other courts finding dealers not to be the agents of manufacturers in other contexts. This is unpersuasive for the following reasons: because agency is not necessary to delegate a duty, because a party to a contract may delegate a duty without relieving itself of liability, because Keystone could be equitably estopped from taking this position, and because arguments raised for the first time on reply are waived. *See* Limited Warranty at DE 23-3 at 1 ("To obtain service… we recommend that you first contact your local selling dealer for warranty service."); Okla. Stat. Ann. tit. 12A, § 2-210(1) ("A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the

contract. *No delegation of performance relieves the party delegating of any duty to perform or any liability for breach."*) (emphasis added); *Sullivan v. Buckhorn Ranch P'ship*, 119 P.3d 192, 201 (Okla. 2005) (equitable estoppel prevents injustice where a party seeks to benefit from a prior misrepresentation upon which the adverse party relied); *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (arguments raised for the first time on reply are waived). Rather than exhaust these numerous arguments, the Court merely presents an analogous hypothetical: if Keystone had written a provision into its warranty agreement that a buyer could obtain relief pursuant to the warranty by writing a letter to Santa Claus, it would be afforded an inequitable absolute bar to any obligation to repair under the warranty (as that is Santa's job) and an absolute bar to suit on the warranty (send that complaint to Santa). Replacing Santa with Camping World could yield the same effect without notifying the buyer that his warranty is useless. The Court is less than delighted by this argument, as it blames the buyer—who is typically less sophisticated and presumably relies upon the seller's instructions—for justifiably relying. And further, even if the Court found Keystone's argument that notification of Camping World could not serve to notify Keystone persuasive, Mr. Mouser *did* notify Keystone of the defects: four times before sending the certified letter by counsel and numerous other times prior to filing suit. There is sufficient evidence to send to the jury whether this constituted reasonable notice, so the Court declines to grant summary judgment.

### (b) *Mr. Mouser met his burden under the backup remedy.*

Keystone's second major argument is that Mr. Mouser's breach of warranty claim fails because he failed to exhaust the limited back up remedy. To be clear, it is not entirely certain what Keystone means by "failed to exhaust;" Keystone alternately writes that Mr. Mouser "failed

to satisfy" or "did not avail himself" of the remedy, but it is unclear what concrete, specific actions Keystone is suggesting Mr. Mouser did not take. (DE 23 at 10–11.) Relevantly, the limited back up remedy in question reads: "As a limited back-up remedy in the event the RV cannot be repaired, after receiving a reasonable opportunity to repair, Keystone may, at its option, either (i) pay you the diminution in value damages, or (ii) provide a similar replacement recreational vehicle, less a reasonable allowance for the owner's use of the original RV." (DE 23-3 at 1.) So, the question becomes under the express terms of this provision and Oklahoma law, what, if any, action was Mr. Mouser required to take?

Assuming this operates as an exclusive remedy clause, Mr. Mouser met his burden under Oklahoma law.[2] "[P]arties may contract to an exclusive remedy for breach, which if reasonable will be enforced and will exclude other remedies." *Pub. Serv. Co. of Oklahoma v. State ex rel. Oklahoma Corp. Comm'n*, 115 P.3d 861, 875 (Okla. 2005), as corrected (July 13, 2005). In a case discussing limited remedies, the Oklahoma Supreme Court has imposed a duty upon the buyer to make demand or notify the seller of the product's failure to work. *See Volz v. Clark*, 303 P.2d 441, 443 (Okla. 1956). This concept accords with the succeeding paragraph of the express warranty, "How to Obtain Service," which instructs the buyer to "first contact your local selling dealer" and provides an address for Keystone customer service should that fail. (DE 23-3 at 1.)

---

[2] This is a fairly generous assumption. Under Oklahoma law, the seller has the burden of showing a listed remedy is a sole and exclusive remedy. *See Tuttle v. Kelly-Springfield Tire Co.*, 585 P.2d 1116, 1120 (Okla. 1978). The limited back up remedy, though it says "limited," uses traditionally permissive language ("may") and lacks the "sole and exclusive" remedy language traditionally found in such clauses. *See generally Collins Radio Co. of Dallas, Tex. v. Bell*, 623 P.2d 1039, 1048–49 (Okla. 1980) (discussing language in limitations of remedies clause). While it was not raised by the parties, it is possible this clause serves to expand the rights of the buyer rather than restrict the legally available remedies. *See Pub. Serv. Co. of Oklahoma v. State ex rel. Oklahoma Corp. Comm'n*, 115 P.3d 861, 875 (Okla. 2005), as corrected (July 13, 2005).

Therefore, it is clear that in order to "exhaust" the limited remedy, Mr. Mouser would have to at least notify Keystone or Camping World of the problems he was facing.

But might he have to do something more than notify? The Court thinks not. To the extent that "exhausting" the backup remedy could mean something more than notice and a reasonable time to cure—such as actual implementation of the specified remedy—that possibility is foreclosed by Magnuson-Moss and under Oklahoma law. Straightforwardly, the Magnuson-Moss Act prohibits warrantors from imposing "any duty other than notification upon any consumer as a condition of securing remedy" unless the warrantor has demonstrated in a proceeding that such a duty is reasonable; Keystone has offered no such demonstration. *See* 15 U.S.C. § 2304(b)(1). And Oklahoma law makes clear what happens where a buyer properly notifies the seller and the seller does nothing: the limited remedy fails of its essential purpose, and the buyer may pursue any remedies available under the U.C.C. *Collins Radio Co. of Dallas, Tex. v. Bell*, 623 P.2d 1039, 1051 (Okla. Civ. App. 1980). The seller's inaction and refusal to honor the limited remedy results in an expansion, not a contraction, of the buyer's rights. The finding that the remedy has failed of its essential purpose is automatic because the seller's failure to honor the chosen limited remedy unfairly deprives the buyer of the benefit of the bargain. *Osburn*, 613 P.2d at 449–50.

This makes practical sense because Mr. Mouser is not in a position (outside of litigation) to force Keystone to honor the backup remedy; all he can do is repeatedly demand that Keystone remedy his troubles. But it is Keystone's duty under the agreement to honor the backup remedy, and Keystone's ultimate decision whether to pay Mr. Mouser or give him a similar RV. Further equitable considerations also support this reading. Keystone is the party who selected the backup remedy when drafting the warranty agreement, ostensibly because it finds it less objectionable

than other remedies that may normally be afforded to Mr. Mouser under law. It would not be sensible or equitable to reward Keystone for deferring or denying this already circumscribed remedy. *Cf. A.B. ex rel. Blaik v. Health Care Serv. Corp.*, No. CIV-14-990-D, 2015 WL 6160260, at *4 (W.D. Okla. Oct. 20, 2015) (waiving contractual exhaustion requirement where plaintiff followed internal negotiation process in good faith before filing and defendant corporation delayed or ignored her claims). The buyer does not have to wait around "exhausting the remedy" (and his patience) while the seller enjoys a bar to suit.[3]  For these reasons, Keystone's argument that Mr. Mouser's suit is barred because he did not exhaust the backup remedy fails.

Therefore, Mr. Mouser's obligation under the limited warranty consists only of notice. Of course, where the claim hinges on reasonable notice, Oklahoma law sends it to the jury. *Cline*, 114 P.3d at 476; *American Fertilizer Specialists*, 635 P.2d at 596. Accordingly, the inquiry must be limited to whether any reasonable jury could find for Mr. Mouser. "The [buyer's] notification may be either oral or in writing and is sufficient if it is informative to the seller of the general nature of the difficulty encountered with the warranted goods;" no magic words are required. *American Fertilizer Specialists*, 635 P.3d at 596. Mr. Mouser has made a clear showing on summary judgment that he did notify Keystone; his demand letter and pre-suit communications are explicit and occur over a number of months, and a reasonable jury could find he met his burden to notify. (DE 29-8; 23-9.)  It is of no moment that Mr. Mouser sometimes invoked a remedy other than the limited backup remedy because, under both Oklahoma law and the express

---

[3] In Keystone's advocated view, it appears Mr. Mouser would not be able to bring a claim if the backup remedies in question were not given, because then the limited remedy would not be "exhausted." But, of course, he could not bring a claim if the backup remedy was honored, because Keystone could point to the limitation of remedy under the agreement. The Court will not entertain this reading.

terms of the agreement, he was not required to use particular words to adequately inform Keystone. Mr. Mouser told Keystone about the issues his RV was facing, made clear his position that the repair remedy had failed, and demanded Keystone remedy the issue. (DE 23-8 at 2.) Therefore, the Court cannot grant summary judgment on his breach of express warranty claim.

### (c)  Other arguments do not entitle Keystone to summary judgment.

Two other arguments are advanced by Keystone, and the Court finds it helpful to clarify their success at this juncture. These arguments are (1) whether the second and third attempts to repair the front A/C breaker defect covered by the warranty and (2) whether time out of service alone can sustain a breach of warranty such that fixed issues (water leak from sink, water damage to trim and floor, trim above couch bubbling, and hydraulic jack leaking) are actionable breaches of the express warranty.

Mr. Mouser has presented sufficient evidence on summary judgment to show the second and third attempts to repair the front A/C breaker defect are covered under the express terms of the warranty. Mr. Mouser's declaration indicates the defect he refers to as the "A/C breaker defect" is a single issue, and that he informed Keystone about the issue within the warranty period. (DE 29-1 at 2.)  The second and third opportunities to repair are covered under the terms of the limited warranty because they arise from the same defect. The relevant provision reads: "If within the one (1) year limited warranty period a defect in materials or workmanship is found to exist that is not excluded from coverage, Keystone's sole and exclusive obligation shall be to repair the same." (DE 23-3 at 1.) The Court finds the language of this provision controlling. Whether a defect is covered is temporally anchored to the discovery of the defect, not the buyer's notice to the seller of a need for repair. ("*If within the one (1) year…a defect is found to*

*exist…*"). It is irrelevant when the notice of repair is given; though notice may serve to provide a defense under other provisions of the express warranty or the U.C.C., it has no bearing on whether the defect is included under the one-year limited warranty as an initial matter. While the specificity of the phrase "is found to exist" certainly leaves something to be desired, the Court construes the ambiguity of the phrase against the drafter and finds that the relevant event is when Mr. Mouser discovered the defect. *See Hampton v. Gen. Motors, LLC*, --- F.Supp.3d ---, 2022 WL 4538440, at *3 (E.D. Okla. Sept. 28, 2022) (construing the terms of a warranty against the drafter). Because Mr. Mouser discovered the A/C breaker defect within the limited warranty period, the second and third attempt to fix the defect are within the plain language of the warranty's terms.[4] Therefore, the Court declines to grant summary judgment or limit Mr. Mouser's A/C breaker claim to the first notice of repair.

Next, Keystone argues that any defects repaired during the initial, 119-day repair period cannot sustain a claim because they were fixed. This argument fails because Oklahoma law allows time out of service to form the basis of a breach of warranty claim, and the Court cannot say 119 days was a reasonable amount of time to cure as a matter of law. Oklahoma law allows time out of service to be considered in a breach of warranty claim. "Implicit in the warranty-imposed obligation to repair or replace is the duty of providing conformable goods within a reasonable time after a defect in the original delivery is discovered." *Osburn*, 613 P.2d at 449. Where the time to repair must be reasonable, reasonableness is a fact issue. *Oberg v. Phillips*, 615 P.2d 1022, 1026 (Okla. Civ. App. 1980). *Oberg*, interpreting a related section of the U.C.C.,

---

[4] Of course, if a defect was repaired and the same element failed again many years later, such a failure obviously would not constitute the same defect or pull the later failure under the terms of the warranty. But the facts of this case support that the original defect persisted through all three repair attempts, and therefore was a single defect covered under the warranty.

wrote persuasively, "[T]he right to cure is not a limitless one to be controlled by the will of the seller, but should more closely approximate the expectations of both parties." *Id*. (finding revocation appropriate where the vehicle was in the shop at least 30 days). Therefore, even if a defect is fixed on the first try, the warranty may be breached if the repair effort takes an unreasonable amount of time. The Court cannot find as a matter of law that 119 days is a reasonable amount of time under the circumstances or that it approximates the expectations of the parties; those issues are issues of fact reserved for the jury. *Id*. Accordingly, the Court declines to grant summary judgment.

### (3) Breach of Implied Warranty

Mr. Mouser's claim for breach of implied warranty of merchantability survives because Keystone has not presented any basis for its entitlement to judgment as a matter of law on the claim under Oklahoma law. Though the express warranty contains a provision disclaiming implied warranties, the Magnuson-Moss Act disallows such disclaimers. *See* 15 U.S.C. § 2308(a). The implied warranty of merchantability is governed by the U.C.C. as enacted in Oklahoma. Okla. Stat. tit 12A, § 2-314(2)(c). A product is merchantable under Oklahoma law when it operates for its ordinary purpose. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1288 (10th Cir. 2013) (applying Oklahoma law). This does not require that the goods are of the best quality, but that they are of a fair average quality such as is generally sold in the market. Okla. Stat. Ann. tit. 12A, § 2-314; *Collins Radio Co. of Dallas, Tex. v. Bell*, 623 P.2d 1039, 1053 (Okla. Civ. App. 1980). It is not enough that a vehicle is capable of being driven; it does not operate for its ordinary purpose if it requires additional, out of the ordinary maintenance. *Hampton v. Gen. Motors, LLC*, --- F.Supp.3d ---, 2022 WL 4538440, at \*5 (E.D. Okla. Sept. 28, 2022).

The only argument directed at the implied warranty of merchantability claim is that it fails because Magnuson-Moss requires a reasonable opportunity to repair—the same unsuccessful argument advanced against the express breach of warranty claim. It fails here as well, and so the Court must deny summary judgment. Mr. Mouser's implied warranty claim survives.

### (4)  Magnuson-Moss Warranty Act

"Claims under the Magnuson-Moss Act stand or fall with a plaintiff's express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1269 (10th Cir. 2020). The parties agree the Magnuson-Moss claim is dependent on the survival of state law breach of warranty claims. As both the express warranty and implied warranty claims survived, the Magnuson-Moss claim, too, survives. *See Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1213 (W.D. Okla. 2015) (dismissing Magnuson-Moss claim where state law warranty claims were dismissed).

### (5)  UDAP/OCPA

Keystone is entitled to summary judgment on Mr. Mouser's OCPA claim because Mr. Mouser has failed to show a misrepresentation or other unfair practice distinct from the warranty. Keystone argued in its summary judgment motion that Mr. Mouser's OCPA claim is not pled with particularity and fails to state a claim. This vein of argument challenges the facial sufficiency of the complaint, not whether evidence in the record is sufficient to support

20

plaintiff's claims; such arguments are procedurally out of step with the posture of this case because they are more appropriate for a motion to dismiss.[5] Without belaboring the point, the Court will not review the sufficiency of the pleading under the 12(b)(6) standard and will proceed to inquire whether there is no dispute of material fact such that Keystone is entitled to judgment as a matter of law, as is appropriate under Rule 56.

Keystone is entitled to summary judgment because Mr. Mouser has not shown any misrepresentation distinct from the breach of warranty.[6] "[T]he four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). On summary judgment, Mr. Mouser asserts only a single specific misrepresentation: "Keystone represented in its warranty that it would repair defects in materials and workmanship

---

[5] The Court finds itself suffering from déjà vu, as this exact argument was advanced on summary judgment concerning the same UDAP pleading language between parties represented by the same counsel in *Andersen v. Thor Motor Coach, Inc.*, 402 F. Supp. 3d 467, 481 (N.D. Ind. 2019). In that case, the court found plaintiff's counsel's identical UDAP claim was fundamentally defective because it did not meet federal pleading standards, but defense counsel failed to file an appropriate 12(b)(6) motion to challenge the pleading. *Id.*

[6] To clarify, OCPA protects against unlawful practices other than misrepresentations; the statute enumerates thirty-two potential unlawful practices. *See* Okla. Stat. Ann. tit. 15, § 753. But Keystone has only challenged a lack of misrepresentations, and Mr. Mouser has only asserted misrepresentations in response, so it is clear we are proceeding on a misrepresentation theory.

found to exist and not excluded from coverage." (DE 28 at 24.)[7] This "misrepresentation" is not separate tortious conduct; it is literally a breach of warranty claim, which is not actionable under OCPA. *See Cline*, 114 P.3d at 473 ("Under these circumstances, we conclude that denying a warranty claim…did not, standing alone, constitute a violation of the OCPA.")*; Dinwiddie v. Suzuki Motor of Am., Inc.,* 111 F. Supp. 3d 1202, 1217 (W.D. Okla. 2015) ("violation of Magnuson-Moss Act does not constitute a per se violation of OCPA")*.*

The breach of warranty could not qualify as a misrepresentation because OCPA does not exist as a vehicle for double recovery in breach of contract cases. It is helpful to analogize a claim under OCPA to a common law fraud claim. Generally, to the extent OCPA claims rely on misrepresentations, they sound in fraud. *Cont'l Res., Inc. v. Wolla Oilfield Servs., LLC*, 510 P.3d 175, 180 (Okla. 2022) (writing of an OCPA claim: "there is no fraudulent transaction until a misrepresentation has been communicated."). In order to prevent tort law from swallowing contracts, "the consensus view among the federal district courts is that under Oklahoma law, a plaintiff cannot simultaneously pursue fraud and breach of contract claims when those claims are based on the same facts and seek the same damages." *Cont'l Res., Inc. v. Wolla Oilfield Servs. LLC*, No. 20-CV-00200-PRW, 2021 WL 2905412, at *6 (W.D. Okla. July 9, 2021) (collecting cases); *McGregor v. Nat'l Steak Processors, Inc*., No. 11-CV-0570-CVE-TLW, 2012 WL

---

[7] Mr. Mouser also argues that the following paragraph particularly alleges a misrepresentation: "Defendant… represent[ed] that the subject of the consumer transaction has performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have." This is meaningless boilerplate that does not particularly allege anything, as the who, what, when, and where is totally absent, and Mr. Mouser did not provide any evidence of what he might mean by this. *See Key v. Exxon Mobil Corp*., 508 F. Supp. 3d 1072, 1085 (E.D. Okla. 2020) (discussing rule 9(b) standards). The Court is also curious regarding Mr. Mouser's choice to rely on this particular boilerplate allegation on summary judgment when he listed thirty other equally vague options in his complaint. Metaphorically, he has thrown spaghetti at the wall and then removed all but one especially slippery noodle.

314059, at *3 (N.D. Okla. Feb. 1, 2012) (if a plaintiff could bring a fraud claim for breach of contract, "any breach of contract action could be simultaneously brought as a tort action"). "To determine whether a fraud claim is sufficiently distinct from a breach of contract claim, the courts consider two things: whether the facts supporting each claim are different, as well as whether the damages arising as a result of each claim are different." *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1087 (E.D. Okla. 2020). In Mr. Mouser's claim, it is not close; the only identified misrepresentations are the warranty's terms. *See id.* (prohibiting fraud claim after similar analysis). As such, his OCPA claim must fail because no distinct actionable unfair practice has been shown.

Further, Mr. Mouser's OCPA claim fails because he has not shown he incurred damages other than those to the RV. Courts applying Oklahoma law find a plaintiff must state a distinct injury other than economic losses caused breach of contract to bring a claim under OCPA. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *36 (S.D.N.Y. July 15, 2016) (collecting Oklahoma cases). Damages are an essential element of an OCPA claim; a viable plaintiff must show something more than a violation of the act to recover. *Tibbetts v. Sight "n Sound Appliance Centers, Inc.*, 77 P.3d 1042, 1051 (Okla. 2003). The Oklahoma Supreme Court has held there must be a distinct injury greater than the purchase price of a product to state a claim under OCPA. *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 629 (Okla. 2000). Mr. Mouser's statement of facts does not include any evidence of damages other than the loss of the purchase price of the RV. (DE 29 at 32–35.) Therefore, his OCPA claim lacks evidence of an essential element, and summary judgment is appropriate as a matter of law. *See Harrison v. Leviton Mfg. Co.*, No. 05-CV-491, 2006 WL 2990524, at *5 (N.D. Okla. Oct. 19,

2006) (plaintiff did not state facial OCPA claim where he did not state damages other than the purchase price of the product).

### D.  Conclusion

Accordingly, the Court **DENIES** summary judgment on Mr. Mouser's breach of express warranty, breach of implied warranty, and Magnuson-Moss claims and **GRANTS** summary judgment on Mr. Mouser's UDAP/OCPA claim. (DE 21.) The Court also **DENIES** as moot Keystone's motion to strike expert testimony, as the Court did not rely on the expert testimony to reach its conclusion on summary judgment. (DE 24.) Keystone is free to challenge the expert in its motions *in limine* at trial if it so chooses.

SO ORDERED.

ENTERED: March 13, 2023

/s/ JON E. DEGUILIO

_____

Chief Judge

United States District Court